**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

DOMINIQUE TABB,                )
                                  )
         Plaintiff,          )
                                  )
v.                              )     Case No. CIV-16-215-D
                                  )
ELSA CARRION,             )
                                  )
         Defendant.      )

## REPORT AND RECOMMENDATION

Plaintiff, Dominque Tabb, a state prisoner appearing pro se and in forma pauperis, has filed a complaint seeking redress for alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. United States District Judge Timothy D. DeGiusti has referred the matter for proposed findings and recommendations consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Pending before the Court is Defendant's Special Appearance and Motion to Dismiss [Doc. No. 23]. Plaintiff has responded to the Motion. *See* Plaintiff's Response [Doc. No. 28]. In addition, the Court has received the court-ordered Special Report [Doc. No. 22] and Supplemental Special Report [Doc. No. 32]. For the reasons set forth below, it is recommended that Defendants' Motion, construed as a motion for summary judgment, be granted and judgment as a matter of law be entered in favor of Defendant.

## I.    Factual Background / Plaintiff's Claim for Relief

On January 13, 2015, the United States District Court for the Eastern District of Oklahoma dismissed an action brought by Plaintiff pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment excessive force claim arising from his incarceration at the LeFlore County Detention Center in Poteau, Oklahoma. The court dismissed the action due to Plaintiff's failure

to respond to the court's show cause order.  *See Tabb v. Jones*, Case No. CIV-11-433-JHP-SPS, (E.D. Okla.) (Jdt. 1/13/15) (the Eastern District action).

At the time the Eastern District action was dismissed, Plaintiff was housed at the Oklahoma County Detention Center (OCDC).  He names a single defendant in this action, Elsa Carrion, the law library supervisor at the OCDC.  Plaintiff claims Defendant hindered his ability to pursue the Eastern District action because he "requested help [from Defendant] numerous times" and "[he] was denied numerous times over the course of 10 months."  *See* Am. Compl. at p. 2.[1]

Plaintiff alleges that the dismissal of the action constitutes the requisite actual injury necessary to support a § 1983 claim for a denial of his constitutional right of access to the courts. In responding to Defendant's motion to dismiss, Plaintiff further claims injury resulting from his alleged inability to reopen his Eastern District case or appeal the judgment of dismissal.  Plaintiff sues Defendant in both her individual and official capacity.  As relief, Plaintiff seeks monetary damages.  *Id*. at p. 6.

Defendant moves for dismissal of Plaintiff's Complaint on numerous grounds: (1) "the plaintiff cannot as a matter of law allege and prove a denial of access to the courts depriving the court of jurisdiction"; (2) "the complaint does not provide fair notice of the claim and should be dismissed under Rule 8"; (3) "the plaintiff does not state a claim for relief against this defendant as a matter of law for denial of access to the courts"; (4) "the plaintiff has not alleged facts that support a claim that the law librarian was acting under color of state law"; (5) "the law librarian, if she is a state actor, is entitled to qualified immunity in this case"; and (6) Tabb did not exhaust administrative remedies."  *See* Def.'s Mot. at pp. 17– 28.  Although Defendant does not move, in

---

[1] Citations to the parties' submissions reference the Court's ECF pagination.

the alternative, for summary judgment, Defendant relies on matters outside the pleadings in support of her motion and includes a "Statement of Facts" section within her Motion. *See id.* at pp. 6-16. Because the Court has not excluded these matters from consideration, the Court construes Defendant's motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) and 56.

## II.    Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255.

"To survive a motion for summary judgment, a nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he [or she] carries the burden of proof.'" *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016) (citations omitted). The nonmovant must go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

Evidence must be based on more than mere speculation, conjecture, or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-92 (10th Cir. 1999). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp*,

45 F.3d 357, 363 (10th Cir. 1995). In evaluating a summary judgment motion, a district court must consider the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Ultimately, the Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III.    Analysis

### A.    Defendant's Affirmative Defense of Exhaustion of Administrative Remedies

Defendant raises the affirmative defense that Plaintiff has not exhausted administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Defendant raises this affirmative defense in most cursory fashion and as the last proposition of her dispositive motion. *See* Def.'s Mot. at p. 25. However, as discussed below, the PLRA's exhaustion requirement is a precondition to suit and, therefore, the Court must address the issue first. Defendant narrowly relies on a single fact to support the affirmative defense: "Tabb did not appeal the denial of any of the grievances he filed related to the law library." *Id.*[2]

### 1.    Factual Record of Plaintiff's Grievance Appeals

Defendant submits as part of the Special Report the Affidavit of Sgt. Sean McKeehan, the Grievance Coordinator at the OCDC. *See* McKeehan Aff. [Doc. No. 22-2]. Sgt. McKeehan sets forth the procedure governing grievance submissions and states that in addition to submitting a request to staff and a grievance, an inmate who disagrees with the grievance denial may appeal to the Jail Administrator, but must do so within ten days. *See id.* ¶¶4-8. Sgt. McKeehan states

---

[2] Defendant does not contend that the grievances submitted by Plaintiff fail to sufficiently address the access to courts claim he raises in this action. Instead, Defendant focuses solely on the fact that Plaintiff purportedly failed to appeal any grievances throughout the period of his detention at the OCDC. The Court limits its review accordingly.

that during Plaintiff's period of confinement at the OCDC, he submitted 103 requests to staff and 39 grievances. He further states that 19 of the requests to staff and 4 of the grievances concerned the denial of law library use. *See id*. at ¶ 9. Sgt. McKeehan includes in the Special Report only the requests to staff and grievances related to the denial of law library use. *See id*. at ¶ 10.

Defendant also submits the Affidavit of Major Jack Herron, the Jail Administrator of the OCDC. *See* Herron Aff. [Doc. No. 22-1]. Major Herron states that Plaintiff did not appeal any grievance denials while at the OCDC, s*ee id*., ¶ 8, and, therefore, failed to comply with the OCDC's inmate grievance procedure. *Id*., ¶ 9.

In a Supplemental Special Report (Suppl. SR) [Doc. No. 32], Defendant submits Plaintiff's grievances directed at his requests for grievance appeal forms ("Appeal Form Grievances"). *See id.* [Doc. No. 32-2].[3] Plaintiff has submitted a virtually identical set of grievances related to this issue and states that the grievances "pretty much speak for themselves[.]" *See* Plaintiff's Response Concerning Court's Order of Supplemental Special Report [Doc. No. 33]. In response to grievances submitted on December 5, 2015, January 23, 2015, February 24, 2015, June 1, 2015, June 4, 2015 and July 23, 2015, Plaintiff was advised that he would be provided grievance appeal forms. *See* Appeal Form Grievances at pp. 2, 9, 12, 15, 17, 19.

The Inmate Handbook is rather cryptic with respect to grievance appeals. It provides:

> Inmates may be afforded the opportunity to appeal grievances to the Jail Administrator by requesting an Appeal Form. The Jail Administrator will review all appeals and make the final decision.

*See* Inmate Handbook [Doc. No. 32-1] at p. 20.

---

[3] The Suppl. SR was submitted at the direction of the Court. *See* Order [Doc. No. 30].

## 2.     Analysis

Compliance with § 1997e(a)'s exhaustion requirement is a "precondition to bringing litigation" and, therefore, "[e]xcept in limited circumstances, the plain language of the statutory text does not allow the court to skip ahead to the merits of the suit[.]" *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1141-42 (10th Cir. 2005). Exhaustion is mandatory and an unexhausted claim cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (*citing Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

Exhaustion is an affirmative defense and a defendant bears the burden of proof. *See Jones*, 549 U.S. at 216; *see also Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) ("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by [42 U.S.C. § 1997e(a)] lies with the defendant."). If the defendant demonstrates the absence of a disputed issue of material fact on the issue of exhaustion, the burden shifts to the plaintiff to "demonstrate with specificity the existence of a disputed material fact" or "show that remedies were unavailable to him as a result of" the actions of prison officials. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

Section 1997e(a) requires "proper exhaustion," that is, full compliance with the prison's grievance procedure. *See Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006). Accordingly, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a . . . claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

But exhaustion is only required if administrative remedies are available. *Ross v. Blake*, -- U.S. --, 136 S.Ct. 1850, 1859 (2016); *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an

administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Id.* at 1250 (citation omitted).

Plaintiff correctly states that unlike requests to staff and grievances, which must be submitted through a kiosk system at the OCDC, grievance appeals must be submitted on paper. *See* Pl.'s Resp. at p. 10; *see also* Inmate Handbook at p. 18 ("Requests to Staff & Grievances will be submitted on the kiosk machine located in the day room . . . ."). Plaintiff states that he requested grievance appeal forms, but was never provided those forms. He acknowledges that he did "once" receive an appeal form, but it was a form to be used by inmates in the custody of the Oklahoma Department of Corrections inmates and housed at the OCDC, and not for pretrial detainees, like Plaintiff, housed at the OCDC. Plaintiff states that he never received the right form. *See* Pl.'s Resp. at p. 10. Plaintiff further states that the OCDC "inmate handbook does not contain instructions about what to do if he does not receive appeal forms after requesting them." *Id*.

The Supplemental Special Report supports Plaintiff's allegations. Plaintiff made numerous requests for appeal forms. The Court finds significant the fact that Plaintiff's initial request for a grievance appeal form was made on December 5, 2014 and never responded to until nearly one year later. The request was "closed" on November 12, 2015 and the reason stated was "Inmate released." *See* Appeal Form Grievances at pp. 16-17. Similarly, on January 23, 2015, Plaintiff submitted a request to staff asking for a grievance appeal form and the request was granted, but not until August 28, 2015 – seven months after Plaintiff submitted the request. *See id*. at p. 14. Moreover, it appears the few times Plaintiff did purportedly receive an appeal form, it was not the proper form. For example, in a request to staff submitted on June 4, 2016, Plaintiff stated: "staff keep bringing me write-up/misconduct appeals. [I] need grievance

appeals." *See id*. at pp. 8-9. And in a request to staff submitted on July 23, 2015, Plaintiff stated: "been getting DOC grievance appeal forms instead of ok. co. jail grievance appeal forms." *Id*. at pp. 18-19. Although the response to each request to staff indicates Plaintiff would be provided the proper forms, *see id*. at pp. 9,19, Plaintiff states that he never received the forms.[4]

Also, significant to the Court is the statement in Major Herron's Affidavit that an inmate must submit a grievance appeal within ten days of the "ruling" on a grievance. *See* Herron Aff., ¶ 2. The Inmate Handbook setting forth the grievance procedures at the OCDC contains no time limit for submitting a grievance appeal. *See* Inmate Handbook [Doc. No. 32-1] at p. 20.

Additionally, the language regarding the appeal procedure is vague and confusing: "Inmates *may* be afforded the opportunity to appeal grievances to the Jail Administrator by requesting an Appeal Form." *See id*. (emphasis added). The language could be interpreted to mean that whether an appeal will be granted is entirely discretionary with the Jail Administrator. Alternatively, the language could be interpreted to mean that by simply requesting an appeal form, an appeal will be granted. In any event, the appeal procedure hardly provides guidance as to the methodology to be followed. Nor, as Plaintiff contends, does the appeal procedure explain what to do if a grievance appeal is not properly addressed.

For all these reasons, Defendant's bare assertion that Plaintiff did not appeal any denial of any grievances he filed related to use of the library is insufficient to meet her burden of establishing that Plaintiff failed to satisfy § 1997e(a)'s exhaustion requirement. To the contrary, drawing all reasonable inferences in favor of Plaintiff, no administrative appeal remedy was

---

[4] On June 1, 2015 Plaintiff also submitted a request to staff stating "please locate me some grievance appeal" and he received a response advising that "Deputy Slaten will bring it to you." *See* Appeal Form Grievances at pp, 11-12.

available.  The lengthy delay in responding to Plaintiff's requests for an appeal form on more than one occasion, the conflict between Major Herron's Affidavit and the Inmate Handbook with respect to the time limitations, if any, for submitting grievance appeals, the confusing language of the appeal procedures set forth in the Inmate Handbook, and Plaintiff's representations that he never received the proper appeal forms support this result.  *Cf Ross*, 136 S.Ct. at 1859 (recognizing that an administrative procedure is "unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates" or is "so opaque" that as a practical matter it is "incapable of use").  Accordingly, the Court proceeds to review the merits of Plaintiff's claim.

**B.      Plaintiff's Access to Courts Claim**

For the reasons set forth below, the Court finds that Plaintiff's sole claim for relief, premised on an alleged denial of access to the courts, fails to demonstrate a violation of Plaintiff's constitutional rights.  Therefore, Defendant is entitled to judgment as a matter of law in her favor.

**1.      Factual Record**

The following facts are not subject to genuine dispute and are taken from this Court's judicial notice of public records, verified allegations of Plaintiff, and documents submitted as part of the court-ordered Special Report.[5]  The Court views these facts in the light most favorable to Plaintiff as the nonmovant.

---

[5] The information obtained from court dockets is a matter of public record and judicial notice of such information is proper.  *See, e.g., United States v. Bagby*, 696 F.3d 1074, 1083 n. 7 (10th Cir. 2012).

### a.    Eastern District Action

Plaintiff's Eastern District action remained pending for a period of approximately three years.  As detailed below, Plaintiff actively pursued his claims for the majority of that three-year period.  However, from the end of October 2014 through January 2015, Plaintiff failed to apprise the court of his current location and did not timely receive the Court's orders or defendants' motions filed during that time period.  As a result, the court dismissed the Eastern District action on January 13, 2015.

Plaintiff commenced the Eastern District action in December 2011.  That same month, Plaintiff filed a Notice of Change of Address, reflecting his prison transfer to Davis Correctional Facility.  *See* Notice of Change of Address [Doc. No. 11].  On January 31, 2012, the assigned Magistrate Judge entered an order requiring the filing of a special report.  *See* Order [Doc. No. 18].  On April 13, 2012, the defendants simultaneously filed the special report and moved for dismissal or in the alternative, summary judgment.  *See* Special Report [Doc. No. 23] and Defs.' Mot. [Doc. No. 24].  On March 26, 2013, the court denied the defendants' motion.  The court found, in part, that the special report was deficient and directed defendants to submit an amended special report.  *See* Min. Order [Doc. No. 55].  On April 25, 2013, the defendants filed the amended special report [Doc. No. 56].

Thereafter, on November 12, 2013, defendants moved for summary judgment and Plaintiff responded.  *See* Defs.' Mot. [Doc. No. 80] and Pl.'s Resp. [Doc. No. 82].  While that motion remained pending, on April 14, 2014, Plaintiff filed a second notice of change of address, indicating that he had been released from custody.  *See* Notice of Change of Address [Doc. No. 94] (identifying current address as 6611 S. Zunis Ave., Unit 2204, Tulsa, OK, 74136).  Plaintiff made no further submissions in the case.

Six months later, on October 14, 2014, the court denied the defendants' second motion for summary judgment and granted the defendants leave "to file an appropriate pleading that fully addresses the exhaustion issue, as previously directed." *See* Min. Order [Doc. No. 95]. On October 28, 2014, the defendants filed an amended motion for summary judgment [Doc. No. 97]. Plaintiff did not timely respond. Consequently, on November 25, 2014, the defendants filed a motion for judgment of confession [Doc. No. 98]. In their motion, the defendants relied, in part, on the local rules of the court which impose a duty on an attorney or pro se litigant to notify the court of any change in address. *See* Defs.' Joint Mot. for Confession of J. [Doc. No. 98] at pp. 2-3.[6] Defendants also submitted proof that their attempts to mail copies of the motion to Plaintiff at his address of record were unsuccessful and that the motion was returned as undeliverable. *See id.*, Ex. 1 [Doc. No. 98-1] and Ex. 2 [Doc. No. 98-2].

The court then issued an order directing Plaintiff to show cause why the defendants' motion should not be granted. *See* Min. Order [Doc. No. 99]. Plaintiff did not timely respond. As a result, on January 12, 2015 the Court granted the defendants' motion for judgment of confession and on January 13, 2015 the Court entered judgment dismissing Plaintiff's action. *See* Min. Order [Doc. No. 100] and J. [Doc. No. 101] ("[d]ismissing action for plaintiff's failure

---

[6] Specifically, the applicable rule provides:

> All papers shall contain the name, mailing address, daytime telephone number, fax number, and email address, if any, of the attorney or pro se litigant. If any of this information changes, the attorney or pro se litigant must notify the Court by filing the form provided by the Clerk and serving a copy on opposing counsel or pro se parties. Papers sent by the Court will be deemed delivered if sent to the last known address given to the Court. If applicable, the attorney is further required to comply with the ECF Policy Manual procedures regarding Change of Contact Information.

LCvR 5.6(a), United States District Court, Eastern District of Oklahoma (renumbered, effective July 5, 2016).

to show cause why the [defendants'] motion should not be granted, as directed by the court on December 1, 2014").

### b. Plaintiff's Detention at the OCDC and Efforts to Access the Law Library or Obtain Legal Materials

On October 28, 2014, a few weeks after the court denied the defendants' second motion for summary judgment, Plaintiff arrived at the OCDC.[7]  The very next day, Plaintiff submitted a request to staff stating that he "need[ed] info on preliminary hearings and depositions" and "need[ed] to use law library."  *See* Special Report, Grievances [Doc. No. 22-3] at pp. 1-2. Defendant denied his request stating: "[a]t this time you have you [sic] representative, all your legal concerns should be submitted to him/her."  *Id*. at p. 2.  Defendant further provided the address for the office of the Oklahoma County Public Defender.  *Id*.

Approximately two weeks later, on November 12, 2014, Plaintiff submitted another request to staff and identified the issue as "seeking to challenge the conditions of my confindment [sic] regarding policies procedures and cruel and unusual punishment."  *See* Grievances at p. 4.  As the requested action he stated: "need to speak with a trained law staff member/clerk or use the library.  *Id*.  In response Defendant told Plaintiff that he could request materials dealing with his civil case "once you have the judge accept your motion."  *Id*.  The very next day, Plaintiff again submitted a request to staff and stated: "state case and civil issues are separate.  [I] have a right to unhindered access to the court.  [Y]ou are hindering me."  *Id*. at p. 6.  Defendant responded: "At this time you have a representative, all your legal concerns should be submitted to him/her."  Defendant then listed the address of the office of the

---

[7] Plaintiff was released from incarceration in April 2014 and arrested on new criminal charges in September 2014.

Oklahoma County Public Defender.  She further stated: what is the civil case you are referring too [sic] Sir." *Id.*

Approximately one month later, on December 10, 2014, Plaintiff submitted another request to staff and stated: "inmate handbook states that inmates who wish to challenge their conditions of confinement get access to the law library."  *See* Grievances at p. 11.  Defendant responded: "File the motion for your challenge in court so that I can look at the docket once you have that filed then you will either get an attorney assigned or can decided [sic] request pro se statutes [sic]."  She further stated: "Let me know when you have the motion filed Sir.  Until then, all your legal concerns about your current criminal case should be address [sic] to your representative." *Id.*

The next day, on December 11, 2014, Plaintiff submitted another request to staff and stated "[I] am not seeking to address anything in court concerning my criminal case.  I HAVE AN ATTORNEY FOR THAT.  [M]y issue is CIVIL."  He further stated: "you say file motion in court but one of the reasons [I] need to use law library is to get address also not a motion [I]'d file but a need to file civil complaint in court.  [P]lease understand my issues have absolutely nothing to do with my criminal case."  *See* Grievances at pp. 13-14.  In response, Defendant stated:

> I understand that you are requesting access due to your civil issue, however I have asked you to provide the case, because it seemed that you had already filed and was wanting access to legal materials, before that can happened I need the case number.  If you would have said that you had not filed and were needing the civil motion then I would have know [sic] that you had not yet field [sic].
>
> I need you to tell me what you need, not what you want to do.  What is it that you are needing, I just need the name of the form.

*See* Grievances at p. 14.

One month later, on January 16, 2015, Plaintiff again submitted a request to staff stating: "am not having my civil legal concerns met. [A]fter submitting numerous rts and grievances." As the action requested, Plaintiff stated: "adequate legal assistance as well as law library access. [N]ot just some forms. [N]eed case law. [N]eed atty. generals address." In response, Defendant again stated: "Sir what is your case number on your civil case. I will need that before I can send you anything that you request." *Id*.

On February 26, 2015, Plaintiff stated "need to file state tort claim . . . will you please tell me the requirements for exhaustion of administrative remedies concerning state tort claims / civil suit." *See* Grievances at p. 19. Defendant responded: "[a]t this time you have a representative, all your legal concerns should be submitted to him/her" and Defendant once again included the address for the office of the Oklahoma County Public Defender. *Id*.

Next, on April 8, 2015, Plaintiff submitted a request to staff and stated: "need address to attorney generals office, department of justice and ok. federal district for the western district." *See* Grievances at p. 22. The following day, on April 9, 2015, Defendant responded and provided the addresses as requested by Plaintiff. *Id*.

On May 11, 2015, Plaintiff submitted a request to staff and stated "got civil case [I] need help with." He further stated: "allow me to use law library or receive law library assistance, case number is civ-11-433-jhp-sps. *See* Grievances at p. 27. This is the first time Plaintiff specifically referenced the Eastern District action, although he did not identify the court in which the case was pending. Defendant responded: "the two cases that I was able to see on the appellate court docket were sent to the district court. I was unable to locate the 2011 case. I will need a copy of the court order you have showing you have an open case with the appellate court." *Id*. Plaintiff then submitted a request to staff on May 14, 2015, and again referenced his

federal civil rights case in the Eastern District. He stated: "have civil cse in the eastern district need legal help," but Plaintiff did not include the case number. *See* Grievances at p. 25. Defendant responded: "please provide the case number." *Id.*

Then, on May 19, 2015, Plaintiff submitted a request to staff and stated: "you are the problem, seriously. please stop hindering me. you have been an issue for months now." He then stated: "I provided you with the case number please provide me with the assistance now, not later. asap. Eastern district court." *See* Grievances at p. 29. Defendant responded: "I had ask one of the officers on the floor to retrieve the order/motion for your civil case, can you please hand them the paperwork. I will take a look at it and return it to you. Once we establish that you have the civil case open and you have no representative for this case, I can start sending you the material you request." *Id.*

According to Plaintiff, he obtained the address for the Eastern District court from a sympathetic prison guard in April or May of 2015. *See* Am. Compl. at p. 2; *see also* Pl.'s Resp. at p. 11. He states that he then wrote the court clerk and was told that his case had been closed. He further states that he wrote back "to find out how Plaintiff could get it reopened, because of his situation was unable to litigate [but] never received a response on how to do so." *See* Pl.'s Resp. at p. 8.

On June 4, 2015, Plaintiff submitted a request to staff and stated: "wrote court and receive a letter back stating my civil case has been closed, but not dismissed. seeking to have case reopened." *See* Grievances at p. 32. Defendant responded: "[s]end me a list of items you need." *Id.* A few days later, on June 8, 2015, Plaintiff submitted a request to staff and stated: "attempting to get civil case reopened, but do not know how." *See* Grievances at p. 34. Defendant responded" "You need to tell me what you need not what you need to do." *Id.*

On June 13, 2015, Plaintiff submitted yet another request to staff and stated: "please reread prior rts. I told you already what i needed. it seems to me that you know less than i do about the law . . . i need to know WHAT IT TAKES TO GET MY CIVIL CASE REOPENED. WHAT FORMS DO I NEED." *See* Grievances at p. 36. Defendant responded twice. First Defendant stated: "[t]he item you have requested will be delivered to you by an officer; your signature is required upon delivery for confirmation." *Id*. She further responded: "If you say not know more than I, then you should know that as a Law Librarian, I CAN NOT [sic] LEAD YOU IN ANY WAY ON YOUR LEGAL DECISIONS! You Sir, will need to provide me with the name of the forms YOU NEED!!!" *Id*.

On June 27, 2015, Plaintiff submitted a request to staff and stated the following: "need a civil procedure book, prisoners self help litigation manual, jailhouse lawyers handbook, or any civil procedure book." *See* Grievances at p. 39. Defendant responded: "At this time you have you have [sic] a representative, all your legal concerns should be submitted to him/her." *Id*.

In response, on June 30, 2015, Plaintiff submitted a request to staff and stated: "i am only to take up my legal issues with my lawyer concerning my criminal case not civil. i am challenging the conditions of my[.]" *See* Grievances at p. 41. He further stated: "allow me to borrow a civil procedural manual/handbook." *Id*. Defendant responded: "there is no 'manual/handbook' I can send to you. if you need the that [sic] particular item you will need to have your family order it and then mail it in. I need the case number once you file so that I can have for my records and place you on the list for access to civil materials." *Id*.[8]

---

[8] The record includes additional requests to staff submitted by Plaintiff in August and September 2015, requesting use of the law library related to a "hold out of Leflore Co." *See* Grievances at p. 46, *see also id*. at pp. 44. These requests are unrelated to the issue raised in Plaintiff's Complaint.

In addition to the requests to staff, the record includes three grievances submitted by Plaintiff. Defendant did not respond to these grievances. Instead, a prison official named Sean McKeehan responded. In a grievance submitted on December 11, 2014, Plaintiff stated that he "needed to challenge the conditions of my confinement" and said "i need a number of different addresses and court cases to cite. also need civil suit and tort claim forms." *See* Grievances at p. 48. Plaintiff's grievance was denied and Plaintiff was told that the law library had provided him instructions on what to do. *Id.*

In a grievance submitted on December 11, 2014, Plaintiff identifies what it is he is trying to file in court – "a 1983 Civil Rights Complaint and a Notice of Tort Claim to the Oklahoma Attorney Generals Office." *See* Grievances at pp. 50-51. He further states: "my issue is not criminal it is civil so it has to go to a civil court but of which i do not have the address and is one of the reasons i need to use the law library. but i keep getting the run around even though inmate handbook is clear inmates who wish to challenge their conditions of confinement get access." *Id.* at p. 51. Plaintiff's grievance was denied on grounds the issue "ha[d] already been addressed through the proper authorities." *Id.*

The only other grievance relating to the claim at issue was submitted by Plaintiff on June 17, 2015 and he stated that he had requested that the law librarian provide him with "either form or statute or law or verbally tell me what to do to get my civil case reopened. it has been closed while i have been here. i do not need her or want her to do the work for me, just provide me with the info that tells me how to do it myself." *See* Grievances at p. 56. Plaintiff's grievance was denied on grounds he had failed to follow proper procedures; specifically, he had submitted 15 requests to staff but refused to "list the materials he needs for his civil suit." *Id.*

Plaintiff was transferred from the OCDC in October 2015. As set forth, Plaintiff did not make any further submissions for filing in the Eastern District action. The last document he filed was the Notice of Change of Address in April 2014. Plaintiff initiated the current action in this judicial district on March 4, 2016. *See* Compl. [Doc. No. 1].

## 2. Analysis

The United States Supreme Court has long-recognized a prisoner's right of access to the courts, i.e., "a right to bring to court a grievance that the inmate wishe[s] to present." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The right is subject to constraints, however. The right is limited to providing inmates the ability to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement. *Id*. at 355. In addition, prisoners are only entitled to a "reasonably adequate opportunity" to present to the courts claimed violations of their constitutional rights. *Id*. at 351. Thus, a prisoner is not entitled to "an abstract, freestanding right to a law library or legal assistance." *Id*.[9] Instead, a prisoner must "demonstrate that the alleged shortcomings of the law library or legal assistance program hindered his efforts to pursue a legal claim." *Id*. In other words, a prisoner must demonstrate he suffered "actual injury." *Id*.

The actual injury requirement "derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Id*. at 349. As the Supreme Court has explained: "[i]t is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage

---

[9] For this reason, Plaintiff's repeated assertions that the ODOC's "virtual" law library denied him a right of access to the courts and that instead, he should have been able to access an actual law library, are insufficient, standing alone, to state a viable claim. *See, e.g.*, Pl.'s Resp. at pp. 8, 11.

prisons in such fashion that official interference with the presentation of claims will not occur." *Id*.

The Tenth Circuit has recognized "two types of prisoner claims asserting denial of the right of access to the courts." *Vreeland, II v. Schwartz*, 613 F. App'x 679, 683 (10th Cir. 2015). "The first type of access-to-the-courts claim concerns a prison's duty 'to provide affirmative assistance in the preparation of legal papers.'" *Id*. (*quoting Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010) (internal quotation marks omitted)). This type of claim does not require assistance "'beyond the preparation of initial pleadings.'" *Id*. (*quoting Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995). "The second type of denial-of-access claim sweeps more broadly [and] prohibits conduct that unduly hinders litigation at any stage of the proceedings." *Id*. (*citing Cohen*, 621 F.3d at 1317). Plaintiff's claim fits within this latter category.

But to prevail, Plaintiff must demonstrate that the prejudice from Defendant's alleged interference "is *directly and inextricably* tied to the adverse disposition of his underlying case and the loss of his right to appeal from that disposition." *Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005) (emphasis added). While Plaintiff must establish "intentional conduct" he need not establish "malicious motive." *Id*. at 1242.

Additionally, "a prisoner must do more than make a mere conclusory allegation of need for unspecified or unlimited materials." *Petrick v. Maynard*, 11 F.3d 991, 995 (10th Cir. 1993). In this regard, although "it will not always be possible to identify the needed material precisely in advance . . . the materials sought should be described sufficiently so that the prison can obtain them for the prisoner without being required to perform legal research for the prisoner." *Id*. at

996.[10]  And, "[t]he prisoner must also *articulate* a need for the requested material with sufficient particularity so that the prisoner's need may be balanced against legitimate penological interests." *Id*.  While a right to legal resources cannot be conditioned on need, "there must be a general allegation of need sufficient to enable a prison to determine the legitimacy of the request." *Id*.[11]

Plaintiff purports to identify two sources of alleged actual injury.  First, Plaintiff claims his case was dismissed because Defendant failed to provide him with the address for the United States District Court for the Eastern District of Oklahoma.  According to Plaintiff, from the time of his release from incarceration in April 2014 until he was rearrested in September 2014, he "constantly checked the court's website for changes in the status of his case, and on several occasions spoke over the phone with a clerk of the court about the judge's upcoming ruling on defendants['] motion for summary judgment, because he had noticed the court's website updates were behind." *See* Pl.'s Resp. at p. 3.  Plaintiff alleges that upon his release from incarceration in April 2014, "the ball was in the judge's court [and] Plaintiff could not do anything and *he was not expected to do anything* until after the judge(s) made a ruling on defendants [sic] motion for

_____

[10] Although some degree of specificity is required, the Tenth Circuit has indicated that an "exact cite" system that would expect a prisoner "to know what he needs without any knowledge of what materials might be available to him . . . may state a viable claim of denial of access to the courts." *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (citation omitted).

[11] In *Petrick*, a prisoner wished to challenge enhanced sentences he received on an Oklahoma conviction due to prior convictions in North Dakota and Minnesota.  He requested North Dakota and Minnesota legal materials which were not available at the prison law library.  He further requested to borrow the items through an intra-library loan program but his request was denied.  The Tenth Circuit found the prisoner's "general request for a 'controlling case on accepting guilty pleas within the State of North Dakota' [to be] excessively broad." *Id*. at 996.  But the court found the remainder of his request including "five specified cases from the Northwest Reporter, one North Dakota rule, [and] one citation to ALR" was "sufficiently precise to enable the prison to respond." *Id*. at 993 n. 2 and 996.

summary judgment." *Id*. (emphasis added). Plaintiff further alleges that when he was arrested in September 2014 "he lost all contact with the outside world for nearly a year [and that] all of his contact information was in his cell phone." *Id*.

The record shows that prior to his incarceration at the OCDC, Plaintiff was quite familiar with the requirement that he keep the court informed of his current address through the filing of a notice of change of address. Plaintiff had filed two prior notices of his change of address in the Eastern District action. [12] Moreover, Plaintiff arrived at the OCDC in October 2014. As Plaintiff acknowledges, he immediately requested access to a law library. But Plaintiff failed to state for what purpose he needed to utilize the law library. Thus, despite Plaintiff's assertion that "one of the main reasons [he] was making requests to access the law library [was] in order to get addresses," *see* Pl.'s Resp. at p. 8, Plaintiff did not so apprise Defendant. Indeed, Plaintiff waited nearly seven months (until May 2015) before submitting a request to staff specifically referencing his Eastern District action. Even then, Plaintiff did not state that he needed the address for the Eastern District court. Additionally, he submitted his request in piecemeal fashion – first identifying the case number, but not the court, and then identifying the court, but not the case number. *See* Grievances at pp. 25, 27.

Based on the above, the undisputed summary judgment record establishes the following:

- Plaintiff was well aware of his Eastern District action and the procedural posture of that action, i.e., that a summary judgment motion was pending before that court, at the time he was incarcerated at the OCDC in October 2014.

---

[12] In this regard, the Court notes that the Eastern District court accepted Plaintiff's Notices without requiring Plaintiff to use any particular form. Plaintiff's Notices were submitted on a blank piece of paper with Plaintiff's handwritten notation "Notice of Change of Address" listed at the top and his current address handwritten below. *See* Notices [Doc. Nos. 11 and 94].

- For a period of approximately 75 days, from October 28, 2014 through January 13, 2015, Plaintiff could have submitted a notice to the court of his change of address or otherwise apprised the court of his current circumstances prior to dismissal of his Eastern District action.

- Plaintiff knew of the notice of change of address requirements and how to file such a notice because he had made two such prior filings in his Eastern District action.

- Plaintiff submitted approximately five requests to staff and two grievances during the period of time that the Eastern District action remained pending. He did not ask for the address to the Eastern District court or reference that action in any of those submissions.

- When Plaintiff made other requests for specific addresses, that information was promptly provided to him.[13]

- Plaintiff did not submit any filings in the Eastern District action after he filed the Notice of Change of Address on April 14, 2014, reflecting his release from incarceration.

Under the particular circumstances of this case, Plaintiff fails to demonstrate that any intentional conduct by Defendant was "directly and inextricably tied" to the dismissal of the Eastern District action or resulted in any other injury to Plaintiff. Because Plaintiff never asked Defendant for the address to the Eastern District case prior to its dismissal and waited several months before making any specific reference to that action, Defendant's failure to timely provide him the address constitutes, at most, negligent and not intentional conduct. *See Simkins*, 406 F.3d at 1242-43 (distinguishing prison official's intentional refusal to forward legal mail to prisoner as required by prison policy as conduct sufficient to demonstrate an impediment to the

---

[13] The Court finds significant the fact that when Plaintiff specifically requested other addresses – including addresses for the Attorney General of the State of Oklahoma, the Department of Justice and the United States District Court for the Western District of Oklahoma – those addresses were promptly provided to him. *See* Grievances at p. 22.

prisoner's access to courts from conduct that is merely negligent and, therefore, not actionable).[14]

Moreover, Plaintiff's general request for access to a law library or assistance with a "civil action" is insufficient. *See Petrick*, 11 F.3d at 995.

Plaintiff further alleges that he could not timely move to "reopen" his case or otherwise file an appeal from the judgment of dismissal. Plaintiff claims that he did not know how to do so. The record shows Plaintiff submitted requests for access to a law library or legal materials so that he could research this matter but he never identified the specific materials he wanted. His request for a "civil procedure book" is "excessively broad." *Petrick*, 11 F.3d at 996. And, even if, under the circumstances, it may not have been possible for Plaintiff to "identify the needed material precisely in advance, " *see Petrick* at 996, Defendant was not required to perform legal research for Plaintiff. *See id*.

More fundamentally, however, any injury suffered by Plaintiff resulted, in the first instance, from his failure to file a notice of change of address. Any subsequent injury "directly and inextricably" arose from that failure and not from Defendant's conduct. Thus, the Court finds unavailing Plaintiff's attempt to bootstrap his subsequent unsuccessful requests for

---

[14] In *Simkins*, the Court also noted that "[i]n certain circumstances, there may be reason to distinguish between an intentional act by prison officials *to* impede a prisoner's access to the courts and an intentional act that [only] *results in* an impediment to court access." *Id*., 1242 n. 3 (citation and internal quotation marks omitted). Here, even if Defendant's conduct were deemed intentional, that conduct falls within the latter example.

information on relief from the judgment or his right to appeal as a basis for establishing actual injury.[15]

Additionally, "the nature of [the] adverse disposition [of the underlying case] can be relevant to the *Lewis* standing inquiry." *Simkins*, 406 F.3d at 1244. The court dismissed the Eastern District action based on Plaintiff's failure to respond to the court's show cause order. Dismissal on that ground was "logically and practically unrelated" to any conduct by Defendant. *See id.*[16] Accordingly, Plaintiff has not established a violation of his constitutional right of access to the courts and Defendant is entitled to judgment as a matter of law on this claim.

### C. Defendant is Entitled to Qualified Immunity

Defendant claims she is entitled to qualified immunity for the conduct alleged by Plaintiff. "Government officials who perform discretionary functions are entitled to qualified immunity if their conduct does not violate clearly established rights of which a reasonable

---

[15] Notably, Plaintiff never sought such relief from the judgment in the Eastern District action even after his transfer from the OCDC in October 2015, and the removal of any alleged impediment caused by Defendant. From that time through January 13, 2016, Plaintiff still could have sought relief from the judgment of dismissal in the Eastern District action pursuant to Fed. R. Civ. P. 60(b). *See* Fed. R. Civ. P. 60(c) (providing that a Rule 60(b) motion must be made within one-year or, where applicable, within a "reasonable time" of the entry of the judgment). Thus, Plaintiff's attempt to attribute the cause of his injury to actions of Defendant is without merit.

[16] Moreover, had Plaintiff sought to appeal the dismissal of his action or moved for relief from the judgment pursuant to Fed. R. Civ. P. 60(b), such efforts would have been unsuccessful. *See, e.g.*, *Kobel v. Lansing Corr. Facility*, 577 F. App'x 844, 845 (10th Cir. 2014) (extraordinary circumstances required to support Rule 60(b)(6) relief found to be lacking where nothing prevented prisoner from apprising the district court of his new location or inquiring about the status of his lawsuit); *Thornton v. Estep*, 209 F. App'x 755, 757 (10th Cir. 2006) (affirming district court's dismissal of pro se inmate's action for failure to prosecute on grounds that inmate had failed to keep court apprised of his current address); *Lehnert v. Hersh*, 154 F. App'x 64, 65-66 (10th Cir. 2005) (affirming denial of Rule 60(b) motion and finding "no excusable neglect" where plaintiff failed to notify the court of her change of address for period of over ten months; plaintiff was familiar with the requirement because she had previously informed the court of a new address and plaintiff did not seek relief from the dismissal of her case for many months after notifying the court of her new address).

government official would have known." *Perez v. Unified Gov't of Wyandotte Cty.*, 432 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is not only a defense to liability, but immunity from suit; thus, 'it is effectively lost if a case is erroneously permitted to go to trial.'" *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In a qualified immunity case at the summary judgment stage, it is the plaintiff's burden to show: (1) that the defendant's conduct violated his constitutional or statutory rights; and (2) that the constitutional or statutory right was clearly established at the time of the alleged unlawful conduct. *Id*. If a plaintiff fails to demonstrate either requirement, the defendant is entitled to qualified immunity and the court, in its discretion, may address the requirements in the order most appropriate to the case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For the reasons set forth above, Plaintiff has failed to establish a violation of his constitutional rights. Therefore, Defendant is entitled to qualified immunity. *See, e.g., Swanson v. Town of Mountain View, Colo*., 577 F.3d 1196, 1199 (10th Cir. 2009) (qualified immunity is proper at the summary judgment stage if plaintiff fails to demonstrate on the facts alleged that the defendant violated his constitutional or statutory rights).

**D.      Plaintiff's Official Capacity Claim Lacks Merit**

Plaintiff also brings an official capacity claim against Defendant. "To the extent [Plaintiff] brings a claim against [Defendant] in [her] official capacity, it is the same as bringing a suit against the county." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). Where, as here, a § 1983 plaintiff fails to demonstrate an underlying constitutional violation by any individual defendant, there is no basis for the imposition of official capacity liability. *Id*. Moreover, the only county policy conceivably identified by Plaintiff is the lack of a freestanding

library at the OCDC. But as set forth above, no constitutional right to a freestanding library exists. Therefore, Defendant is entitled to judgment as a matter of law in her favor as to any official-capacity claim brought by Plaintiff.

**V.  Conclusion**

For the reasons set forth, Defendant should be granted summary judgment. The record fails to demonstrate a violation of Plaintiff's constitutional right of access to the courts.[17]

## RECOMMENDATION

It is recommended that Defendant's Motion to Dismiss [Doc. No. 23], construed as a motion for summary judgment, be granted and judgment as a matter of law be entered in favor of Defendant.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by January 3, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[17] Based on the recommendation that summary judgment be granted in favor of Defendant on grounds that the record fails to demonstrate a violation of Plaintiff's constitutional right of access to the courts, it is not necessary to address the additional grounds for dismissal and/or summary judgment raised by Defendant.

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 12th day of December, 2016.

_____

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE